IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JACQUETTA MCCALL, Plaintiff, | November 5, 2024 |
| -versus- | 2:24-4520 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant. | Charleston, SC |

TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE DAVID C. NORTON
UNITED STATES DISTRICT JUDGE, presiding

A P P E A R A N C E S:

For the Plaintiff: VICTORIA N. SMITH, ESQ.
Victoria Smith Law Firm
520 Folly Road, Suite 25
Charleston, SC 29412

For the Defendant: ROBERT W. WHELAN, ESQ.
Whelan Mellen and Norris LLC
89 Broad Street
Charleston, SC 29401

Court Reporter: KAREN E. MARTIN, RMR, CRR
PO Box 835
Charleston, SC 29402

Proceedings reported by stenographic court reporter. Transcript produced with computer-aided transcription software.

Tuesday, November 5, 2024

(WHEREUPON, court was called to order at 10:54 AM)

**THE COURT:** Take your seats. Thank you.

Yes, sir? You're up.

**MR. WHELAN:** Thank you, Your Honor. Robbie Whelan for the defendant. This is our motion for judgment on the pleadings. The plaintiff has asserted two causes of action against State Farm. State Farm is the plaintiff's underinsured motorist carrier. Before suing State Farm, shortly before suing State Farm, the plaintiff filed suit against the at -- against the alleged tortfeasor. That suit is being defended by the liability carrier for that tortfeasor still. My understanding is that the carrier is attempting to tender its limits, the liability carrier to the plaintiff. They have not agreed to a covenant not to execute, so that has not been done.

**THE COURT:** So State Farm has not made an appearance in state court?

**MR. WHELAN:** State Farm has made an appearance.

**THE COURT:** Okay.

**MR. WHELAN:** But the liability carrier is still defending.

**THE COURT:** You're not defending, you just made an appearance?

**MR. WHELAN:** That's correct, Your Honor.

THE COURT: State court action is against the at-fault driver and the bar for lack of a better --

MR. WHELAN: That's right.

THE COURT: And the bar is in default?

MR. WHELAN: Correct.

THE COURT: Okay.

MR. WHELAN: And I'm not involved in that litigation. Ms. Smith will be able to clear up anything I screw up in that regard. But the purpose of this motion is that the plaintiff's suit against State Farm is at best premature. The reason is they've sued us for breach of contract. And I don't think they contest, based on the briefs, that there are no benefits owed under the contract. There would only be benefits owed after there is a legal right to recover against the tortfeasor which, of course, there is not.

With respect to bad faith, I will concede that the law is a little more uncertain there. However, looking at the complaint, what's been alleged in this case, there is three paragraphs under their bad faith cause of action. And the one that alleges breach is Paragraph 39. And it says, Defendant has without just cause and in bad faith refused to pay the underinsured motorist benefits to the plaintiff. But I believe they concede again that there is no contractual obligation to

pay those benefits. So there is nothing due under the contract under the UIM provision of the policy.

So for that reason, we do think that dismissal is proper at this stage. Again, it's not to say she can't file in the future. But right now, under the facts alleged, she can't. If she could, it would present a host of problems concerning her presumably attempting to get the claim filed, depose the adjustor, lord knows what else, while this underlying suit is pending.

And the last point I'll make, Your Honor, is if it's proper for Ms. McCall to sue the UIM carrier in this case, it would be proper in every UIM case for that. There's nothing to distinguish, at least not in the complaint, this case from every UIM case, which involves an insurer behind the scenes so to speak.

**THE COURT:** So looking at your briefs, let's assume that -- and we've already said there's a pending lawsuit in state court against the driver and the bar.

**MR. WHELAN:** True.

**THE COURT:** And the bar is in default. Right?

**MR. WHELAN:** Yes, that's my understanding.

**THE COURT:** Now, if she were to go out and get a default judgment against the bar for $500,000, then would that not kick in the UIM coverage because there is a collectible judgment?

**MR. WHELAN:** You know, I've never thought of that, Judge.

**THE COURT:** That's why I get the big bucks.

**MR. WHELAN:** Right. I'm not dodging the question, I've just never given that any thought.

**THE COURT:** Because the tenor of your brief is that they are not obligated to pay until there's a collectible judgment -- or a judgment, doesn't say collectible. So if there's a default judgment for an amount of money over $50,000 in I guess the bar, then possibly she's got a better argument that you ought to pay her?

**MR. WHELAN:** Yeah, I'm not really sure how that would work because could you get -- I just don't know the answer to this. Could you get a default judgment against the bar while the tortfeasor is still being defended and supposedly has some defenses there.

**THE COURT:** If it goes into default, you can get it. I guess all you have to do is go over there and parade -- go to see the judge and he'll sign -- he or she will sign some order if you have some evidence.

**MR. WHELAN:** I don't live in that world, so I'll defer to Your Honor and counsel on that.

**THE COURT:** All right.

Okay. Ms. Smith, what do you have to say?

**MS. SMITH:** Your Honor, I think the Myers case is really right on point here. They argue that this case was filed prematurely. But it is abundantly apparent, based on my client's medical bills, based on the punitive damages aspect of the underlying case against the tortfeasors, that regardless of any amount collected from the liability carrier or from the uninsured bar here, that State Farm is going to owe their insured something. To date they have offered nothing. And that is kind of the crux of our dispute here is that they are not fairly evaluating it.

Myers case only requires you bring an action against the tortfeasor and serve the UIM carrier. It does not require that you actually obtain judgment against the at-fault driver before the UIM carrier's duty of good faith and fair dealing arises. And the court held specifically in the Myers case that -- it says, This court feels that the South Carolina Supreme Court will hold when faced with this issue that an insured is not required to obtain a judgment against an at-fault driver before the insured's UIM carrier's duty arises to exercise good faith and deal fairly with the insured regarding UIM benefits. And it discusses the Williams case and says, At most, the Williams case and the statute only establish that the carrier's duty to act in good faith regarding UIM benefits

arises after the insured brings a lawsuit against the at-fault driver and serves the UIM carrier with process.

They were served, Your Honor, in December of 2023 with the filed summons and complaint against the at-fault driver and the bar. So, you know, we allege here that State Farm has already breached its duty to Ms. McCall, its insured. And the standard of review here, we all know, is the allegation in the complaint must be taken in the light most favorable to the non-moving party, which is Ms. McCall. So we do not feel that this was brought prematurely.

I would agree with Mr. Whelan that whatever the Court's decision is on this matter will probably have a rippling effect in that it will either encourage State Farm and other UIM carriers to delay for years in paying UIM benefits. As we all know, in circuit court right now we cannot get trials for several years because there is such a backlog of cases. And meanwhile the UIM carrier is sitting there collecting interest on money. So they have a financial incentive to continue withholding benefits from their insured if they're able to do so unless and until there's an actual judgment entered against an at-fault driver.

So, you know, I believe one way or another, your decision, Judge, is either going to be encourage State

Farm to continue wrongfully withholding UIM coverage, or alternatively encourage them to stop doing that and probably clear out a lot of cases that are on the docket in Common Pleas right now.

**THE COURT:** I think that may be wishful thinking, that latter sentence, that last sentence anyway. So are you -- have you filed a lawsuit in state court for --

**MS. SMITH:** I have, Your Honor. And we have a lot of bad faith issues going on there as well. There were, ultimately, five injured claimants who are all represented by lawyers. We all came to an agreement a year ago that we would be willing to divide that liability coverage on a per capita basis. And yet the liability carrier continued to refuse to tender that money.

And, you know, of course, I don't want to sign anything that's going to let the driver off the hook and then the UIM carrier gets to play the game of that's not our insured. We can't control her. We can't make her appear for a deposition and so on and so forth. So we're not interested in letting her out unless they all cooperate.

And frankly, Your Honor, I think the UIM carrier's actually in violation of the ADR court order in the underlying tort suit right now. Because they have

refused, and again Mr. Whelan is not the attorney involved in representing State Farm as UIM carrier in that suit, but they have refused to abide by the circuit court's ADR order that requires us to attend a mandatory mediation within 300 days of the suit being filed. So I'm probably about to file a rule to show cause against them in that regard in the underlying tort case

**THE COURT:** So who is in the underlying tort case? The $50,000 that y'all are going to divide up, what carrier has the other driver's insurance?

**MS. SMITH:** Allstate.

**THE COURT:** Okay. So Allstate -- you're talking about Allstate is not doing -- doesn't Allstate is the one that has to go to mediation instead of State Farm?

**MS. SMITH:** And the UIM carrier. I believe that they are all required to go. And the other issue with Allstate is they're not being forthcoming, they're being very evasive on remaining property damage.

**THE COURT:** I'm shocked. Okay. Thank you.

Yes, sir. Anything else?

**MR. WHELAN:** Yeah, just the final thing I'll add, Judge, is the danger here. I know everybody comes in here and says the sky is falling. But it's a lawsuit about a lawsuit. So she's saying that if Your Honor rules in her favor, then everybody's going to copy her and

there's going to be a lot more of these lawsuits. And then they're going to come into court and say, well, the carriers are not following the ADR rules, or they're doing this improperly or that improperly. I don't know where that stops.

But anyway, I think that this Court's inquiry is limited to the facts alleged in the complaint. What's alleged in the complaint is that State Farm has not paid benefits. Those benefits undoubtedly under the law are not owed at this point under Lawson v. Porter and the Connolly case from two years ago by the Supreme Court.

**THE COURT:** So the Myers case that she cited is only -- is irrelevant to the contract cause of action is only relevant to the bad faith cause of action?

**MR. WHELAN:** Yeah, I think that's true. But yeah -- well, actually Myers does dismiss the contract cause of action. I think it, frankly, raises more questions than it answers. But I think if you look at the recent law of the State Supreme Court, and that Connolly case in particular, it is going back and reinforcing what the statute says and what all these policies say, which is the UIM benefits are not due until there's a legal entitlement to recovery against that tortfeasor. Thank you.

**THE COURT:** Okay. Thank you.

Yes, ma'am?

**MS. SMITH:** And one thing I just want to add for clarification, Judge. There is no dispute on liability in the underlying tort suit. The drunk driver is at fault. State Farm's never disputed that. It's solely an issue of damages. We presented damages in excess of twice the available known liability coverage to State Farm and they've refused to make any offer.

**THE COURT:** Okay. For all clients or just yours?

**MS. SMITH:** Just mine.

**THE COURT:** Okay. Gotcha.

All right. We'll get something out and go from there. Thank you very much.

**MR. WHELAN:** Thank you, Judge.

**MS. SMITH:** Thank you.

(WHEREUPON, court was adjourned at 11:06 AM)

***

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/Karen E. Martin 4/15/2025

______________________________ __________________

Karen E. Martin, RMR, CRR Date