# Exhibit 1

*Deposition Transcript of McCall*

22

one you're talking about, not the one that was filed against the at-fault driver?
MR. WHELAN: Yeah, thank you very much, Victoria, for correcting that. Yet again, my question was bad.
BY MR. WHELAN:
**Q. We'll talk about when you filed this lawsuit later. But right now I want to focus on the lawsuit you filed against --**
A. Ms. Tisdale.
**Q. -- Ms. Tisdale. Do you understand what I'm saying?**
A. Yes.
**Q. And you chose to sue Ms. Tisdale about eight days after the accident; true?**
A. Yes.
**Q. Can you tell us why, or do you remember?**
A. It was my understanding that this is her second offense. Her insurance was bad; I guess she didn't have enough coverage. So I was like, yes, I want to...
**Q. So before you filed the lawsuit against Ms. Tisdale, it was your understanding that she did not have enough insurance coverage; true?**
A. Yes.

23

**Q. And why did you wait -- why did you not serve the UIM insurance carrier with the lawsuit the day that you filed it, if you knew the day you filed it she didn't have enough insurance coverage?**
A. Because if I would have sued her and she had money to pay me, then -- I don't know.
**Q. I'm sorry. Can you explain that a little better?**
A. I'm saying, like -- okay. Her insurance didn't have enough coverage. Maybe she had another policy or some other insurance or some other coverage or other money that she could have helped -- paid.
**Q. So you wanted to investigate that; true?**
A. Yes.
**Q. And did you investigate that before or after you filed the lawsuit against Ms. Tisdale?**
A. Before.
**Q. So when you filed the lawsuit --**
A. No, no, no. Against Ms. Tisdale, after. Sorry. After.
**Q. When did you complete your investigation as far as whether Ms. Tisdale had additional coverage or monies available to pay you?**

24

MS. SMITH: Object to the form.
A. That, I don't -- I don't know the timeline.
**Q. Well, you know it happened after the lawsuit was filed, correct?**
A. Do I know what happened after the lawsuit?
**Q. No, ma'am. You know the investigation that you just described occurred after you sued Ms. Tisdale; true?**
A. True.
**Q. But you don't know when after it occurred, correct?**
A. True.
**Q. Are you aware of anyone other than your attorney, Ms. Smith, who has spoken to State Farm regarding your claim for Underinsured Motorist benefits?**
A. Am I aware that anybody else other than her spoke to you?
**Q. Yes, ma'am. I need to know of anyone on your behalf who spoke to State Farm regarding Underinsured Motorist benefits in this -- related to your accident with Ms. Tisdale?**
A. I'm not aware, but I also leave

25

everything to my attorney.
**Q. What is the status -- who is Ms. Tisdale's insurance carrier?**
A. Is it Allstate?
**Q. I don't know.**
MS. SMITH: I will say, for the record, it is Allstate.
A. That name just rings a bell, Allstate.
**Q. Good reason. So what is the status with the negotiations with Allstate?**
A. Um, they have tried to issue money, and I was not accepting it.
**Q. How much did they try to issue?**
A. I think it was a little bit like 30...
**Q. $30,000?**
A. Yeah. I think.
**Q. And you declined that offer; is that true?**
A. Correct, yes.
**Q. And have there been any other negotiations besides the $30,000 offer, that you're aware of?**
A. That I'm aware of, I leave everything to her to handle that.
**Q. Did you demand a certain amount of money**



Electronically signed by Eve Wilbanks (101-177-349-6970) e185bdc0-0bc5-4e9e-b605-793f3cd67ce1

26

**from Allstate to settle your claim with Ms. Tisdale?**

A. It wasn't really a certain amount of money. But I do have a judgment for 200,000.

**Q. So are you asking Allstate to pay you 200,000?**

A. Yes.

**Q. And do you know what their response from that 200,000 is?**

A. I don't know.

**Q. Do you know whether their $30,000 offer is still on the table or --**

A. I don't know.

**Q. So at this point, you don't know whether Allstate is going to ultimately pay you $30,000 or more than $30,000 or less than $30,000; true?**

A. True.

**Q. And you have not signed any sort of a release or a covenant not to execute or other document protecting Ms. Tisdale from your suit; true?**

A. True.

**Q. And how much does Ms. Tisdale owe you today?**

A. Again, I have the 200,000 judgment.

27

**Q. Who is it that owes you 200,000?**

A. Um, if Ms. Tisdale doesn't have the coverage to pay that, then I was expecting my insurance. Because I pay extra money for Underinsured Motorist to protect me in this situation.

**Q. You have a $200,000 judgment, right?**

A. Uh-huh.

**Q. Do you know who that judgment is against?**

A. Um, yes. The bar who overserved her.

**Q. And is that The Montague Room?**

A. Yes.

**Q. So is it your understanding that The Montague Room owes you $200,000 as a result of that judgment?**

A. Somebody owes me the money: Montague Room, Victoria (sic) -- not Victoria. Montague Room, Ms. Tisdale, State Farm, nobody has paid me anything. And this has gone on a long time.

**Q. But, ma'am, with respect to the judgment that you referenced --**

A. Yes. The judgment was against The Montague Room, correct.

**Q. The judgment against The Montague Room**

28

**does not legally entitle you to recover from Ms. Tisdale, does it?**

A. No, I guess not.

**Q. And the judgment against The Montague Room doesn't legally entitle you to recover from State Farm, does it?**

MS. SMITH: Object to the form.

A. Possibly.

**Q. Under what possibility would that be?**

MS. SMITH: Object to the form.

**Q. Let me ask you a different way. I assume she's objecting because it's a legal issue. Do you know whether the --**

A. I don't know the legals of this.

**Q. But you do know that you need to recover from Ms. Tisdale to have a -- to be able to legally recover from Ms. Tisdale --**

A. I know I'm legally able to recover from Ms. Tisdale, the bar and State Farm because of my coverage. Ms. Tisdale because she hit me; the bar because they overserved her. I know that.

**Q. Well, let me ask you this: You don't have a judgment against Ms. Tisdale yet, correct?**

A. Correct.

**Q. You've asked, I assume, for a jury trial**

29

**against Ms. Tisdale; true?**

A. Uh-huh.

**Q. Is that a yes?**

A. Yes.

**Q. And no jury has yet heard your case --**

A. Correct.

**Q. -- against Ms. Tisdale? You hope that one day a jury will hear your case against Ms. Tisdale?**

A. Sure. Yes.

**Q. And how much money will you ask a jury to award you against Ms. Tisdale?**

MS. SMITH: Object to the form.

A. That I -- she's asking me to object to the question legally.

**Q. No.**

MS. SMITH: If I say any kind of objection on the record, you'll still have to answer it. But if you don't know, you don't know.

BY MR. WHELAN:

**Q. It sounds like Ms. Smith just told you you don't know the answer to that. Is that true?**

A. I mean, I really don't know the answer to that.



Electronically signed by Eve Wilbanks (101-177-349-6970) e185bdc0-0bc5-4e9e-b605-793f3cd67ce1

30

**Q. So you have not yet decided how much you're going to ask a jury to award you against Ms. Tisdale; true?**
A. I haven't, yes.
**Q. Do you know whether you will ask them to award you more or less than a hundred thousand dollars against Ms. Tisdale?**
A. Yes.
**Q. More?**
A. More.
**Q. Do you know whether you will ask a jury to award you more or less than $200,000 against Ms. Tisdale?**
A. Yes, more.
**Q. Do you know whether you'll ask a jury to award you more or less than $500,000 against Ms. Tisdale?**
A. Me, consciously, probably asking more than that.
**Q. Can you say whether you'll ask a jury to award you more than a million dollars against Ms. Tisdale?**
A. Probably in that ballpark, maybe.
**Q. And how much will a jury award you against Ms. Tisdale?**

31

A. I don't know.
**Q. Why not?**
A. Because I'm not the juror or the jury. I can't speak for them to say how much they'll award me.
**Q. We're going to have to wait and see, aren't we?**
A. Yeah.
**Q. What do you intend to do with the money when you receive it?**
MS. SMITH: Object to the form.
A. I don't know what I would do with the money. Medical bills, for one.
**Q. And what else?**
A. Anything else? I don't know what I would do with the money.
**Q. You have no plans for what to do with the money?**
A. No.
**Q. And do you currently owe amounts for medical bills?**
A. Yes.
**Q. And how much do you owe?**
A. That, I don't know.
**Q. What is your best estimate?**

32

A. A lot. I don't know. I still have mail I haven't even opened from medical.
**Q. Why not?**
A. Because I know what it is. It's a medical bill that I owe. I know the name of the company that is sending it. I'm like, okay, they keep coming.
**Q. Do you know if you owe more or less than $50,000 in medical bills?**
A. Yes.
**Q. More than $50,000?**
A. Yes.
**Q. Do you know if you owe more or less than a hundred thousand dollars in medical bills?**
A. Yes.
**Q. More than a hundred thousand. Do you know if you owe more or less than $200,000?**
A. Probably.
**Q. Probably more?**
A. Yeah. I haven't really opened them.
**Q. Have you been asked to give a deposition in the other suit, the suit against Ms. Tisdale?**
A. I think I have. I think I have.
**Q. Have you given a deposition?**
A. No. This is the only one I have.

33

**Q. And why have you not given a deposition in the suit against Ms. Tisdale?**
A. I have no idea. The date -- I don't know if they presented me with a date or were they supposed to do it all at once.
**Q. My understanding is that you have refused to provide a deposition in the case against Ms. Tisdale.**
MS. SMITH: That is incorrect.
A. That's not true. I haven't refused anything.
**Q. Okay.**
MS. SMITH: I will say for the record that is incorrect, Robbie. They have not noticed it. We have -- they have asked for dates. We've said we're more than willing to provide dates. Give us some; we'll assist in choosing. And it hasn't been noticed. And that would be David Cobb for Allstate.
BY MR. WHELAN:
**Q. Okay. Are you aware that State Farm has asked to take your deposition --**
A. Yes.
**Q. -- in the case against Ms. Tisdale?**
A. Oh, no.



Electronically signed by Eve Wilbanks (101-177-349-6970) e185bdc0-0bc5-4e9e-b605-793f3cd67ce1

38

**Q. Well, that's a year. We're getting warmer. Can you give me a month when State Farm, according to you, should have paid the $200,000?**
A. Uh, I don't have a month.
**Q. Do you have a season?**
A. No.
**Q. And do you know how much UIM coverage you had on your State Farm policy?**
A. No. But I can pull it up. I don't know.
**Q. Okay. Why don't you do that?**
MS. SMITH: I'm going to say this on the record, that, Robbie, I'm e-mailing you a copy of the original Nichols demand. And I will, when it is my turn to do some follow-up questions, probably ask for this to be attached as an Exhibit.
BY MR. WHELAN:
**Q. Ms. McCall, you just were looking at something on the phone. Now Ms. Smith has told you something, and you're looking at her computer. Do you see what --**
MS. SMITH: She can't see what is here.
A. I can't see.
**Q. Well, you're looking at her computer?**

39

A. I'm looking at her too.
MS. SMITH: It was an angle.
**Q. So does that help you answer your question?**
A. No. Because I couldn't find the document.
**Q. We just took some time; you looked on your phone; and you're unable to find what your limits are; is that right?**
A. Yes. That's correct. I can see where the insurance cards are, not the documents.
**Q. You understand what a policy limit is, don't you?**
A. Huh-uh.
**Q. No, you do not?**
A. No, I do not.
**Q. Do you know that your insurance policy has a limit, which is the most the insurance company will pay for a particular occurrence?**
A. I didn't know that.
**Q. You didn't know that until this very second?**
A. Correct. Yeah.
**Q. And so you didn't understand that Ms. Tisdale's policy had a policy limit on it?**

40

A. I didn't know it was a limit, no.
**Q. What did you think it was?**
A. I just thought it was the most they wanted to pay me.
**Q. So you were not aware that there was a cap on her insurance policy?**
A. No.
**Q. And you're not aware until this moment that there is a cap on your UIM coverage --**
A. No.
**Q. -- is that true? That statement is correct?**
A. Correct.
**Q. And if there is a cap on your UIM coverage, you do not know what that is; true?**
A. Correct. Do you know what it is?
**Q. Yes, ma'am, I do. How much will the jury award you for your medical bills in your suit against Ms. Tisdale?**
MS. SMITH: Object to the form.
A. I don't know how much they're going to award me.
**Q. Why not?**
A. Because I'm not the jury. I can't speak for the jury.

41

**Q. Do you acknowledge that it's possible a jury may give you less than what you asked for?**
A. I don't know.
**Q. Do you acknowledge it's possible that a jury will give you more than what you asked for?**
A. I don't know.
**Q. Is it impossible for the jury to give you more or less than what you asked for?**
A. What do you mean "impossible"?
**Q. Well, it's either possible or not. I'm trying to make this easier for you.**
A. But I don't know what they would give me. I don't know if it's possible or not. I don't know if they will give me the exact amount that I request; I don't know if they will give me less or more. I don't know. Sorry.
**Q. And when will you know that?**
A. When we go to trial, I guess.
**Q. Okay. Have you ever asked State Farm for anything less than -- let me ask you a different question. Would you be willing to accept less than $200,000 from State Farm?**
A. No.
MS. SMITH: Object to the form.
**Q. Have you ever been willing to accept**



Electronically signed by Eve Wilbanks (101-177-349-6970) e185bdc0-0bc5-4e9e-b605-793f3cd67ce1

**less than $200,000 from State Farm?**
MS. SMITH: Object to the form.
A. Have I ever been -- no.
**Q. What is the lowest number you'll take to settle your --**
MS. SMITH: Object to the form. Yeah, don't answer that.
MR. WHELAN: You're instructing her not to answer?
MS. SMITH: I am.
BY MR. WHELAN:
**Q. What is the highest number you'll take to settle your UIM claim against State Farm?**
A. I don't know.
**Q. I know you didn't speak to very many people at State Farm about this claim. But at any time was anybody unprofessional or rude to you from State Farm?**
A. At any time during this process?
**Q. Concerning this claim --**
A. This claim?
**Q. Yes, ma'am.**
A. No. I haven't really spoken...
**Q. I'm sorry?**
A. I haven't spoken to anybody.



**Q. Are you alleging that State Farm acted in bad faith?**
A. Am I alleging that they are?
**Q. Let me ask a different question. Do you believe that State Farm has acted in bad faith with respect to your UIM claim?**
A. That's legal?
**Q. In a way, yes.**
A. Then I can't answer that. I don't know.
**Q. Can you tell me anything that State Farm has done that you believe was improper?**
A. Not protecting me was improper.
**Q. Anything else?**
A. Not paying out sooner was improper.
**Q. Anything else?**
A. Uh, not having my back, maybe.
**Q. Anything else?**
A. Not acting as my insurance provider should act. I don't know.
**Q. Anything else? I'm going to ask -- I'm making a list. Let me just tell you what I have written down. Okay?**
A. What?
**Q. So I asked you what you believe State Farm did that was improper, and I've written down**



**four things: Number one, not protecting me; number two, not paying sooner; number three, not having my back; and, number 4, not acting as my insurance company should.**
**Are you criticizing State Farm for anything else in this suit, your suit against State Farm?**
A. At this time I can't really think of --
**Q. If you think of something else, please let me know. Okay?**
A. Okay.
**Q. Feel free to interrupt me and let me know. Okay?**
A. Okay.
**Q. Let's start with number one. What was State Farm supposed to protect you from?**
A. The other insurance in the case against them.
**Q. Are you talking about Allstate?**
A. Yeah.
**Q. So -- and how has State Farm failed to protect you from Allstate?**
A. So I have the Underinsured Motorist Coverage. You legally know how the process works; I don't legally know how the process works. I pay



for extra coverage, so I expect the protection in this case or in this accident.
**Q. And has State Farm failed to protect you from anyone other than Allstate?**
A. Mm, I guess Allstate and Ms. Tisdale -- I guess that's one and the same, kind of, maybe.
**Q. Okay. Has State Farm failed to protect you from anyone other than Allstate and Ms. Tisdale?**
A. Protection can go a long way as far as not just Ms. Tisdale and Allstate. Just protecting me in the sense of this accident.
**Q. Okay. Number 2, you said not paying out sooner. When should State Farm have paid you?**
A. They legally know the timeline of when to pay out Underinsured Motorist. I don't know the timeline.
**Q. Okay. So you don't know when they were supposed to pay you; true?**
A. When they found out that Ms. Tisdale didn't have the coverage, is that legally saying that State Farm is supposed to protect me in that sense?
**Q. Are you asking me?**
A. You know the policy. You know --



Electronically signed by Eve Wilbanks (101-177-349-6970) e185bdc0-0bc5-4e9e-b605-793f3cd67ce1

**Q. Well, I'm not your attorney, so I can't answer those questions for you, unfortunately. When you say it was improper for State Farm to not have your back or not act as your insurance company should, were you speaking about anything other than them not paying you sooner?**
A. As far as the coverage goes?
**Q. Yes, ma'am.**
A. And as far as -- it was about having the back part; is that what you're asking me?
**Q. Yeah, right.**
A. It was about the accident.
**Q. But did they do anything that you're complaining about other than not pay you what you want to be paid?**
A. Protecting.
**Q. Anything else?**
A. Mm, no.
(Plaintiff's Exhibit No. 2, 2/7/24 letter to State Farm from Victoria Smith Law Firm, was marked for identification.)
BY MR. WHELAN:
**Q. Ms. McCall, Exhibit 2 is a letter dated February 7th, 2024, from the Victoria Smith Law Firm. Take your time and look that over and let**



**me know when you're done.**
**Are you done?**
A. Yes.
**Q. Have you seen this document before?**
A. Um, I left this to my attorney to file.
**Q. And is it true that on February the 7th of 2024, your attorneys sent some medical records to State Farm?**
A. Yes. Based on this letter, yes.
**Q. And this letter says you were still in treatment at that time?**
A. Yes. Correct.
**Q. And your attorney said that your bills would exceed the amount of med pay benefits under State Farm's policy; is that true?**
A. Yes. That's what it said.
**Q. And do you recall how much those med pay benefits were?**
A. No. I don't recall.
**Q. Does a thousand dollars sound right?**
A. Possibly.
**Q. Did you receive a check for any med pay benefits?**
A. Yes. I believe so.
**Q. What did you do with that money?**



A. Paid some of the medical bills.
(Defendant's Exhibit No. 3, E-mail with attached letter of 3/27/24 to State Farm from Victoria Smith Law Firm, was marked for identification.)
BY MR. WHELAN:
**Q. Exhibit 3 is a four-page document dated March the 27th of 2024. Let me know when you've had a chance to review that document.**
MS. SMITH: Let the record reflect that Exhibit 3 is a settlement opportunity that I referenced earlier in an e-mail to Mr. Whelan during this deposition.
BY MR. WHELAN:
**Q. Okay. You've had a chance to look over Exhibit 3?**
A. Yes.
**Q. Have you seen this document before?**
A. I don't recall seeing this document. I leave that to my attorney.
**Q. So when you hired your attorney on December the 10th or December the 11th, you trusted her to handle the claim with the insurance companies and to negotiate if she saw fit; true?**
A. Mm, kind of. Yes.



**Q. Okay. If that's not true, let me know.**
A. Yes. Kind of, yeah.
**Q. Okay. And did you see anything in this document that's incorrect?**
A. I guess it's page 3.
**Q. What is incorrect on page 3?**
A. In conclusion, the UIM body coverage. That was March of 2024.
**Q. Yes, ma'am. I didn't follow you. What are you saying is incorrect on here?**
A. The amount.
**Q. Okay. Where it says $50,000 in bodily injury coverage?**
A. Yes.
**Q. What do you believe the correct amount is?**
A. It should be way higher.
**Q. 200,000?**
A. Yeah.
**Q. And so, as of March 27th, 2024, would you have settled your claim for $50,000, your UIM claim?**
MS. SMITH: Object to the form.
A. No.
**Q. Would you have settled your UIM claim**



Electronically signed by Eve Wilbanks (101-177-349-6970) e185bdc0-0bc5-4e9e-b605-793f3cd67ce1

50

**for $100,000 on March the 27th of 2024?**
A. No.
**Q. Would you have settled your UIM claim for $150,000 on March 27th of 2024?**
A. No.
(Defendant's Exhibit No. 4, E-mail with 4/15/24 attached letter of to State Farm from Victoria Smith Law Firm, was marked for identification.)
BY MR. WHELAN:
**Q. Now, Exhibit 4 is another document. I'm going to give you a chance to look at this and tell me if you've seen it before.**
**Just, again, take your time and -- in fact, Ms. McCall, you don't have to read the whole thing if you don't want to. I was just wondering if you've seen this document before or not.**
A. I leave all the paperwork to Victoria to handle.
**Q. Ms. McCall, we just looked over that document. Is it fair to say you don't recall seeing this document before?**
A. Yeah. I just leave all the paperwork to Victoria to handle.
**Q. Okay. I sent some Interrogatories in**

51

**this case that are not due yet and have not been answered, and appropriately so. But since I have you here, I'm going to go ahead and ask you and make sure that I know the answers. You're not aware of any witness to the negotiation of your UIM benefits with State Farm?**
A. Say that again.
**Q. Are you aware of anyone who knows anything about the negotiations of UIM coverage with State Farm?**
A. Do I know of anybody?
**Q. Yes, ma'am. If you know of any witnesses to that or anybody who was involved in it, I need to know who they are so I can potentially take their deposition as well.**
A. Oh, no. I don't know of anyone.
**Q. Thank you. I also asked for any facts supporting the contention that State Farm refused to tender its Underinsured Motorist coverage, as alleged in the Complaint. Are you aware of any other facts that we haven't discussed today regarding your allegation that State Farm should have paid the coverage sooner?**
A. Other than me saying it?
**Q. Yeah. Are you aware of any other facts**

52

**that we haven't talked about?**
A. Um, the facts -- other than the fact that it should have been paid sooner and you didn't pay it?
**Q. Yeah. Which I think you've already told me about. But is there any other -- are there any other facts that you're aware of that are relevant to your lawsuit against State Farm? Because I need to ask you about those facts, if so.**
A. Can you elaborate the question? I'm not sure.
**Q. Okay. You understand that you filed a lawsuit against State Farm, right?**
A. Uh-huh.
**Q. And you claim that State Farm should have paid you $200,000 or more; true?**
A. Uh-huh.
**Q. Yes?**
A. Yes.
**Q. And you say that we should have done that some time ago, right?**
A. Correct, yes.
**Q. You understand that you have to present facts to a Judge or a jury to establish your case?**
A. Correct. Yes.

53

**Q. And you understand it's my job as an attorney to determine --**
A. Those facts.
**Q. -- those facts. Okay?**
A. Gotcha.
**Q. And I know we've been talking for about an hour and 15 minutes or so. I just want to know, are there any other facts that you're aware of related to this suit that we haven't talked about yet?**
A. Besides the fact that you know Allstate didn't have enough?
**Q. Anything else?**
A. Um, the facts of -- I guess you all knew the facts of the case, basically saying.
**Q. Okay. And, then, the next Interrogatory, I asked for you to list each action or inaction of State Farm which you contend was reckless, willful or wanton. Are you aware of --**
A. You're going to have to say that one more time.
**Q. Are you aware of anything that State Farm did that was reckless that we haven't already talked about today?**
A. Reckless, as far as not withholding --



Electronically signed by Eve Wilbanks (101-177-349-6970) e185bdc0-0bc5-4e9e-b605-793f3cd67ce1