IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Jacquetta McCall, | ) | C/A NO.: 2:24-cv-04520-RMG |
| | ) | |
| Plaintiff, | ) | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| -vs- | ) | |
| | ) | |
| State Farm Mutual Automobile Ins. Co., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, by and through her undersigned counsel, hereby responds to Defendant's Motion for Summary Judgment as follows:

**STANDARD OF REVIEW**

"In reviewing a motion for summary judgment, the court must 'draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion.'" Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 817-18 (4th Cir. 1995) (quoting Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992)).

**ARGUMENT WITH BRIEF FACTUAL BACKGROUND**

Plaintiff argues that summary judgment in favor of the Defendant Insurer in this matter is grossly premature and would be grossly unfair to Plaintiff for the following reasons: (1) Defendant misrepresents the totality of Plaintiff's [a layperson's] testimony to this Court and totally disregards Plaintiff's testimony that she may have been confused on limitations, coverages and legal issues and that she would accept a settlement for policy limits if it was

offered and if her attorney recommended or encouraged her to consider the settlement opportunity and (2) Defendant has effectively created restrictions on Plaintiff's ability to conduct discovery.

It should be noted that Defendant is a corporation worth over One Hundred and Forty Billion dollars and is run by skilled businessman and employs experienced attorneys and trained gatekeepers to articulate Defendant's position on Defendant's behalf. In contrast, Plaintiff is a layperson and acknowledges that she does not have sophisticated knowledge of insurance and contract law. The obvious imbalance between Plaintiff versus the Billion Dollar Insurance Company Defendant was a driving factor in Plaintiff seeking legal counsel to represent her interests. This case involves a motor vehicle collision stemming from a drunk driver causing a severe, multi-vehicle pile-up collision. The drunk driver was clearly and obviously grossly uninsured with a minimum limits policy. **Defendant and its attorneys have known full and well the limitations of the drunk driver's liability coverage and the multiplicity of claimants.**

At the scene of the collision, it was obvious that there were multiple claimants with claims against the drunk driver. Very shortly after the collision, Plaintiff and Plaintiff's counsel learned of at least five (5) claimants with bodily injury claims who were represented by legal counsel. Plaintiff's counsel has always been forthcoming and shared that information with Defendant and Defendant's counsel. Because of the foreseeable and inevitable fight over liability coverage and distribution amongst the known claimants and in order to effectively conduct discovery by issuing subpoenas and preserving evidence, Plaintiff understood from conversations with her counsel that it was necessary to immediately file an action against the

drunk driver and the establishment who over-served the drunk driver in order to protect her rights.

Defendant has been afforded multiple opportunities to tender its coverage. It is undisputed that multiple written requests have been made on behalf of Plaintiff by Plaintiff's attorney to resolve Plaintiff's UIM claim with Defendant on a UIM policy release. It is undisputed that Defendant has refused to tender any of Plaintiff's UIM benefits whatsoever despite the fact that damages in gross excess of the known liability coverage available have been presented. The reasons why Defendant justifies Defendant's withholding of Plaintiff's benefits is the issue giving rise to this bad faith action and Plaintiff has been prevented from deposing a key witness to Defendant's refusal to tender the benefits owed to Plaintiff.

**(1) MISREPRESENTATION OF TOTALITY OF PLAINTIFF'S TESTIMONY**

Defendant has cherry-picked portions of the Plaintiff's testimony in efforts to mislead this Court into believing that the Plaintiff has rejected opportunities to resolve her UIM claim with the Defendant. On redirect, Plaintiff agreed that she hired an attorney in part because the insurance coverages and limitations were not well understood by her as a layperson. Plaintiff agreed that she lacked knowledge about insurance coverages and stacking. **Plaintiff testified that if her attorney recommended a settlement, she would follow her attorney's advice.** Plaintiff has not ordered a copy of the transcript of her deposition based on the expense associated with doing so. For the Defendant, who is Plaintiff's own insurance carrier, to try to force Plaintiff to incur an additional litigation expense to show the Court the full transcript is an additional example of unfair dealing.

It is very critical to note that at this present time, Defendant has NEVER offered a single cent of the underinsured motorist benefits to Plaintiff despite being aware that there is only Fifty Thousand Dollars in bodily injury liability coverage and despite being aware that there is an agreement that the Fifty Thousand Dollars will be distributed evenly amongst the five known and represented claimants in Ten Thousand Dollar distributions. Defendant misleads this Court by asserting that Defendant has no ability to reasonably determine the set off amount of liability coverage. That assertion is simply false and disingenuous. The Defendant knows that the set off amount of liability coverage to Plaintiff is Ten Thousand Dollars and the Defendant knows that Plaintiff has already incurred more than double the amount of the liability set off in medical expenses alone.

In short, Plaintiff has never had the opportunity to settle with Defendant because Defendant has never offered Plaintiff one cent of her underinsured motorist benefits despite Plaintiff presenting more than double the amount of medical expenses than the known liability coverage available for Plaintiff to collect through the drunk driver's carrier.

**(2) PREJUDICE IN RESTRICTING/DISALLOWING PLAINTIFF TO CONDUCT DISCOVERY**

Despite Plaintiff's total cooperation with scheduling and sitting for a deposition in this matter, Defendant has effectively blocked access from Plaintiff taking the deposition of a key witness who has knowledge of Defendant's valuation or lack thereof and the underlying motivations and purported reasons for Defendant's withholding of ALL of Plaintiff's Underinsured Motorist benefits.

Plaintiff has pled that Defendant has wrongfully withheld UIM benefits. The Court must accept the allegations as true and view the Complaint in the light most favorable to the Plaintiff as the nonmoving party. Defendant argues that Plaintiff must obtain a judgment against the at-fault driver prior to Defendant's duty to tender the UIM benefits owed to Plaintiff. That is not the law in South Carolina. **Under South Carolina law, the plaintiff can bring a bad faith claim for negligent failure to settle a claim against a UM/UIM carrier after a lawsuit has been filed against the defendant driver and the UM/UIM carrier has been served with the summons and complaint. Myers v. State Farm Mutual Automobile Insurance Co.,950 F.Supp.148 (1997); Halmon v. American International Group, Inc. Insurance Co., 586 F.Supp.2d 401 (2007).**

Plaintiff has alleged that Defendant acted in bad faith in refusing to pay UIM benefits. "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Nichols v. State Farm Mut. Auto. Ins. Co.,* 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983). Furthermore, a bad faith claim may exist even in the absence of any violation of an insurance contract provision, as "the benefits due an insured are not limited solely by those expressly set out in the contract." *Tadlock Painting Co. v. Maryland Cas. Co.,* 322 S.C. 498, 503, 473 S.E.2d 52, 55 (1996). Halmon, Id. **"The court refuses to accept Defendant's assertion that insurance companies may be adversarial and owe their customers no duty whatsoever until the issue of liability is conclusively established in a separate tort action, which could take months or even years. There is simply no good reason why insurance companies should not be required to treat customers who have been paying premiums for years with**

**at least a modicum of respect and dignity, instead of automatically doubting them in an attempt to avoid paying them benefits.** For this reason, the court declines the Defendant's invitation to overturn or cast doubt upon the holding of *Myers,* which recognized a duty of good faith and fair dealing between insurer and insured beyond the requirements embodied within the four corners of the insurance contract document itself. Halmon, Id.

S.C. Code of Laws Section 38-77-260 prevents an insurer from requiring a person entitled to receive first-party benefits to release or relinquish any rights which he/she may have arising out of the legs liability of any third-party in order to receive payment of the first-party benefits owed. Insurance carriers are not entitled to hold first-party benefits hostage on these conditions. In the event [UIM insurance company] denies that it owes the UIM PD coverage for this claim, the duty of good faith and fair dealing nevertheless imposes on it an obligation to tender to its insured the amount which it concedes it owes under the first-party UIM BI coverage. *See, e.g., Newport v. USAA*, 11 P.3d 190 (Okla. 2000); *see also Orangeburg Sausage Co. v. Cincinnati Ins. Co.,* 316 S.C. 331, 450 S.E.2d 66, 72-73 (Ct. App. 1994) ("The [trial] court held there was clear and convincing evidence that Cincinnati acted recklessly or in conscious disregard of OSCO's rights by: [among other things] refusing to pay, without explanation, even the undisputed portions of OSCO's claims for eight months, despite repeated requests for payment…. After carefully reviewing the record, we agree with the trial court's analysis."). There would be no reasonable basis or good faith reason for [UIM insurance company] to retain insurance proceeds which it acknowledges are due to its insured and to earn interest on those sums while forcing its insured to pursue legal action to recover the full amount due to her. *See*

*Richardson v. Kentucky Nat. Ins. Co.,* 216 W.Va. 464, 607 S.E.2d 793 (2004) ("[T]he [insurer] knew it had an obligation to pay the [insured's] claim, yet it essentially held the proceeds of the insurance policy hostage in order to settle all of the appellant's other statutory and common law claims."); *PHC, Inc. v. North Carolina Farm Bureau Mut. Ins. Co.,* 129 N.C. App. 801, 501 S.E.2d 701(1998) ("Under the circumstances of this case, we hold that defendant's refusal to pay at least the undisputed amount of loss to plaintiff was unwarranted, and the trial court properly awarded attorneys' fees ...."); *Carpenter v. American Family Mut. Ins. Co.*, 2015 WL 8529775 (D. Colo. 2015); *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 11 P.3d 162 (Okla. 2000); *Hatfield v. Liberty Mut. Ins. Co.*, 98 F. App'x 789 (10th Cir. 2004).

Here, the Defendant has effectively held the Plaintiff's UIM benefits hostage and has indicated that they will continue to do so until the Plaintiff executes a Covenant Not to Execute for the Ten Thousand Dollars in available liability coverage. Defendant does not have the right to force Plaintiff to sign such a document. Plaintiff refuses to do so because executing a Covenant for the at-fault driver will only prejudice the Plaintiff at trial. There is no benefit whatsoever to Plaintiff executing a Covenant to protect the drunk and grossly underinsured driver. If Plaintiff were to execute a Covenant, the at-fault driver's counsel would ask to be relieved by the Court and the at-fault driver would then become *pro se*. This would only create additional challenges in discovery and at trial for the Plaintiff. Defendant historically has taken the position that as a UIM carrier for a Plaintiff, the Defendant owes no duty to communicate with the at-fault driver in discovery. Defendant would much prefer to have an empty chair at trial in the underlying tort action versus having the unlikeable drunk driver present.

The Defendant was made aware that the at-fault driver's minimum limits policy must be divided amongst five known claimants - all of whom are represented by counsel. Defendant was made aware and put on notice that a UIM claim would be brought. To date, no additional liability coverage has been discovered for the Plaintiff's claim by either Plaintiff or the Defendant. Defendant is aware and was aware prior to the filing of this action, that Plaintiff's medical expenses, actual and punitive damages grossly exceed any amounts of liability coverage that are known to exist. At no point has Defendant disputed liability in the underlying motor vehicle collision or disputed the value of the claim.

Plaintiff has presented damages to the Defendant as Plaintiff's UIM Carrier in excess of the liability coverage available under the at-fault driver's minimum limits policy and has requested that Defendant tender the UIM coverage owed. Defendant has declined to tender any amounts of UIM coverage. Defendant continues to withhold the UIM coverage from Plaintiff without justification. **The wrongfully withholding of coverage - even for one day - constitutes the act of bad faith which is the basis of this lawsuit. Here, Defendant has withheld UIM coverage from Plaintiff since March of 2024.** Plaintiff is not required to first obtain a judgment against the at-fault driver especially when Defendant's acts of bad faith have already occurred. To allow the Defendant to delay addressing Plaintiff's claim for bad faith for years until disposition of the case against the at-fault driver is patently unfair. Plaintiff alleges and will show that Defendant's duty to tender UIM benefits owed to the Plaintiff arose in March of 2024 and that the Defendant's breaches of contract and duty of good faith have already occurred and continue to occur without remedy.

## **CONCLUSION**

Plaintiff has established an issue of material fact as to whether Defendant breached its duty of good faith and fair dealing towards the Plaintiff in March of 2024, whether that breach is continuing, and Plaintiff has been restricted from engaging in discovery to determine whether Defendant breached its duty to conduct any independent evaluation whatsoever of Plaintiff's claim for underinsured motorist benefits. As such, Plaintiff requests that this court deny Defendant's motion for summary judgment in its entirety.

Respectfully Submitted,

s/Victoria N. Smith___________
Victoria N. Smith, Esq.
(Federal ID No. 13916)
Victoria Smith Law Firm, LLC
520 Folly Road, Suite 25 PMB 334
Charleston, SC 29412
Phone: 843-800-0365
Fax: 843-928-8040
victoria@victoriasmithlegal.com